JAMES CHRISTIE *against* JOHN WOODS and GEORGE WOODS, jun., and JANE ESPY, executors of DAVID ESPY, surviving executor of FREDERICK NAGEL.

When a deposition refers to books of account, copies of them at least should be produced, properly authenticated, to entitle the whole deposition to be read in evidence.
Vexation and unreasonable delay would subject a debtor to the payment of interest, in an action for goods sold and delivered.

*INDEBITATUS* assumpsit for 393*l.* 9*s.* 0¼*d.* for goods sold. Pleas, *non assumpsit infra sex, et plene administaverunt.* Replication *actionis causa accrevit infra sex annos*, assets and issues.

The account was for goods sold in Baltimore between 6th November, 1773, and 29th October, 1774, and payments had been made up to September, 1775, which reduced the principal sum to 157*l*. 16*s*. 3¼*d*. Shortly after, the plaintiff sailed for England, where he has since continued.

The plaintiff offered the deposition of James Jaffrey, who was his agent and clerk, in evidence, to prove the existence of the debt, which in several instances referred to the plaintiff's ledger and journal, and it had been previously agreed by the counsel on both sides that this deposition should be read in evidence without objection.

Mr. Woods for the defendants contended, that the intention of the counsel never went further than to cure the irregularity of the meeting of the commissioners, and the want of a formal commission, and that it could not amount to more than considering his deposition in the same state as if he was personally present giving testimony. The plaintiff's books of original entries, or at least proper authenticated copies of them, were indispensably necessary, as the best evidence in the party's power.

Mr. Hamilton for the plaintiff, at length agreed that the only object of the agreement was to cure those two irregularities, but insisted that there was no necessity for producing the books, which were very voluminous, and that they might be wanted at the same time at other places.

Yeates, (Smith, J., declining to take any part of the decision, having been formerly of counsel with the defendants,) observed, that independent of the conceded object and intention of the counsel, he should have deemed it his duty to have directed the whole deposition to be read, according to the express and pointed words of the agreement. But from what had passed at the bar, he was of opinion that such parts of the deposition as referred to the journal and ledger directly, should not be read. The waste or day-book, which contains the original entries, and states the transactions as they happened, should have been produced, or at least true copies thereof proved and authenticated in some such manner as that prescribed by the British statute of 5 Geo. 2, c. 7, for the recovery of British debts in the then colonies, which had been much practiced under before the late revolution. Yet whatever facts can be ascertained by the deposition, from the knowledge and recollection of the deponent, inde-

pendant of the books, are good evidence ; and it was read accordingly.

In the course of the cause, the defendant's counsel read another deposition of Jaffrey, (taken 31st August 1786, before this suit was brought,) subjoined to a copy of the account, in order to shew some inconsistency in his testimony ; on which the court ruled, that the copy so sworn to might now be read in evidence throughout.

The plea of the statute of limitations was readily got over. It appeared that the goods were sold on six months' credit, and the last date of delivery of a considerable quantity was on the 29th October 1774, and therefore the ultimate time of the credit was expired on the 29th of April, 1775. From that period until the first January 1776, was 8 months 3 days. The interval from thence until 21st June 1784, is wholly to be disregarded in the calculation, by a law passed 12th March 1783, § 6. From this last day until the 12th June 1788, when the summons issued, is 3 years 11 months and 22 days, making the whole time 4 years 7 months and 25 days. No want of assets appeared, the executors having paid the widow and guardians of Nagle's children considerable sums of money.

The only question remaining was the point of interest, which the plaintiff's counsel contended to be due from the expiration of six months after the several sales ; and examined a witness to prove that the usage of merchants in Baltimore was conformable thereto. On the other hand, it was shown in evidence, that Nagel having died the latter end of 1775, entitled to many outstanding debts, his estate had suffered greatly by continental money, and had thereby lost near 5000l. One of the executors went to Baltimore with money to pay off the plaintiff's demand, but he had gone to Great Britain, without leaving any agent.

For the plaintiff was cited Doug. 361. 1 Barnes, 151. 2 Burr. 1086. 3 Wms. 107. Dall 313.

The defendant cited Dall. 266. 2 Bla. Rep. 761.

Yeates, J. stated in his charge to the jury, that it had been settled by repeated decisions in this and other courts, that interest was not allowable generally on an open account for goods sold, unless in the three instances mentioned in Dall. 315, 316. To demand interest in the present instance from the expiration of the credit, was extravagant in every view.

The plaintiff went beyond seas in 1775, leaving no agent behind him. Nagle died the same year, possessed of considerable outstanding debts. The executors of Nagle wished to discharge the plaintiff's demand, and repaired to Maryland for that purpose.

But to whom could they tender the. mony ? Tender is dispensed with where the party is out of the realm. Co. Lit. 210. *b*. In such a case during the war, it has been solemnly determined, that seven and an half years interest shall be remitted on a bond.

After the action was brought on the 12th June 1788, the plaintiff's laches may be said to end; the executors then knew to whom with safety they might pay their money. From this time they may be said to be guilty of vexation and unreasonable delay, and should make compensation on principles of justice and common honesty. By allowing interest from the institution of the suit, which has been protracted near nine years, the jury will do no more than justice. The plaintiff on due consideration, will have no cause of complaint, all circumstances being taken into view; and Nagel's representatives may be also satisfied in having the plaintiff's property in their hands, without making him any compensation, between twelve and thirteen years.

Verdict *pro quer.* for 157*l.* 16*s.* 3¼*d.* only.